No. 1,023.

## THE ISLAND COAL COMPANY *v.* RISHER.

MASTER AND SERVANT.—*Safe Place to Work.*—*Respective Duties.*— *Mining.*—A servant must use his faculties in ascertaining whether danger actually exists, if the same be patent or open to view; but he is not bound to be looking out for latent and hidden dangers, nor is he charged with knowledge of the dangerous character of the place in which he is required to work (in this case a room in a coal mine), if it is the duty of the master to make it safe, for the servant is always justified in assuming that the master has performed his duty, and to act upon that assumption within reasonable limits.

SAME.—*Safe Place to Work.*—*Presumption.*—*Mining.*—Where the mine boss has ordered a servant to enter a certain room to perform service, it is not incumbent upon the servant to test the safety of the roof by tapping upon it, and his failure to do so cannot be held to be negligence on his part.

SAME.—*Safe Place to Work.*—*Notice of Danger.*—*Mining.*—Nor can it be said that because the servant had some information that some rock and slate had fallen from the roof previous to his entering the room, this was notice to him of impending danger of the falling of more rock and slate.

SAME.—*Contributory Negligence.*—*Mining.*—The servant's want of knowledge of the dangerous condition of the roof, and the fact that he was ordered to go into the room by the mine boss, rendered his act in entering the room justifiable.

SAME.—*Mixed Negligence of Master and a Servant.*—*Liability to Another Servant.*—The failure by the mining company to keep the roof of the mine safe was culpable negligence, and the fact that the mine boss was also negligent would not excuse the mining company.

EVIDENCE.—*Expressions of Pain.*—Expressions of present pain and suffering by an injured person are competent to be given in evidence.

From the Sullivan Circuit Court.

*S. N. Chambers, S. O. Pickens, C. W. Moores* and *J. S. Bays,* for appellant.

*J. T. Hays,* for appellee.

REINHARD. J.—The appellant is a corporation operating a coal mine in Sullivan County. The appellee as the servant of the appellant, was working in said mine, and while so employed was personally injured by falling rock or debris from the roof of said mine. This action was brought to recover damages for such injury. The complaint is in two paragraphs. In the first it is averred that the appellee was in the employment of the appellant as a servant, for hire, in its coal mine, his work consisting in laying down iron track in the mine; that on the day named the appellant ordered the appellee to leave his said work and regular line of service and to go to room No. 5 in said mine and assist and direct in clearing up the fall of debris in said room; that it was the duty of the appellant to construct, keep and maintain the room and passage ways, in which its servants were required to work and pass, in a safe and secure condition, but that in disregard of its duty in this respect; the appellant negligently suffered and permitted the roof in said room in which appellee was directed to work as aforesaid, to become insecure, unsafe, and in a dangerous condition, and negligently failed to secure the roof at said point by properly propping and timbering the same, or taking down the loose and dangerous portions thereof, notwithstanding the appellant had notice and knowledge of such unsafe and insecure condition long before the injury occurred; that on the day named, and in pursuance to orders and directions of the appellant, given as aforesaid, appellee left his regular line of employment and went to work and to directing in clearing up the fall of debris in room No. 5 in said mine; that he had no notice or knowledge of the dangerous and unsafe condition of the roof in said room; that while performing said work and giving directions, as aforesaid, a large amount of rock or debris fell upon

him from above, thereby greatly injuring his back, spine, etc., without any fault or negligence on his part, but wholly through the fault and negligence of appellant, as aforesaid.

The second paragraph is the same as the first, except that instead of charging the negligence directly to the appellant it is averred that on the day of the injury one Silas C. Risher was employed by the appellant as a mining boss in said mine, and as such it became and was his duty to visit and examine the working places of the appellee at least every alternate day while appellee was at work in said mine, and to see that the working places of appellee and other workmen were properly secured by props and timbers, and were maintained in a safe and secure condition, and if he found any place or places where appellee was at work or required to be in an unsafe or insecure condition, not to permit him to work in such place or places except for the purpose of repairing and making such place or places safe and secure; but that said Risher, in disregard of his duties as such mining boss unlawfully and negligently failed to perform any and all of his said duties in respect to the safety of the appellee's working place as aforesaid; and that the appellant and said Silas C. Risher, as such mining boss, in utter disregard of their duties hereinbefore set out, unlawfully and negligently suffered and permitted the roof of said room and entries to become insecure and dangerous, and failed to visit and examine and secure the said roof at said points by properly propping and timbering the same, or make the same safe and secure by taking down the loose and dangerous portions thereof, and to notify appellee of the insecure and dangerous condition of the roof where appellee was required to work and pass; that said Silas C. Risher had full and complete authority

The Island Coal Company *v.* Risher.

from appellant to direct appellee where, when, how and with what tools to work, and to order the plaintiff to leave his regular line of employment as hereinbefore set out and to go into room No. 5 in said mine and assist in and direct the clearing up of the fall of debris; that, in pursuance of said orders and directions, appellee proceeded to said work, and that while so engaged in a prudent and careful manner, without any knowledge of the insecure condition of said roof, etc., as in the first paragraph.

The jury returned a special verdict, and upon it the court rendered judgment for the appellee. Error is predicated upon the court's action in overruling the motion of appellant and sustaining the motion of appellee for judgment on the special verdict. The first objection urged to the special verdict is that it fails to show the appellee's freedom from contributory negligence in connection with the sustaining of the injury complained of. The appellant insists that instead of showing affirmatively the absence of appellee's negligence, as the law requires the verdict to do, it actually discloses that he was guilty of such negligence. This insistence is based upon that portion of the special verdict from which it appears that during the time of his employment in appellant's mine, prior to the date of his injury, the appellee had done other work than that for which he claims he was specially employed, such as putting in timbers for the support of the roof, and that he was a practical miner of twenty years' experience, having filled the position of "mine boss" and being thoroughly familiar with the operation of the mine in all of its departments. With this knowledge and experience, it is urged, the appellee must have known of the imminent danger constantly threatening those at work about this mine from the falling of stone, slate and debris from the

roof of the mine, and that he was required to use care commensurate with such known danger, and that he should have made a minute examination of the roof when he entered room No. 5 in obedience to the command of the mine boss, to ascertain whether it was safe, before proceeding to obey such orders, and having failed to make such examination, he assumed all risk incident to the new employment. It is further argued that as the special verdict further shows that a piece of stone had just fallen from the roof when appellee was ordered to enter the room, of which he had knowledge, this made it incumbent upon him to exercise still greater care and diligence to avoid danger owing to the probability of the falling of other stone and debris from such roof.

After a careful consideration of the question, we are unable to agree with the learned counsel for the appellant in the conclusions they draw from the facts found in the special verdict. Independently of any statute, it was the appellant's duty to use at least ordinary care and skill to make and maintain the place where appellee and other employes were required to work, in a reasonably safe condition. The appellee, when he was ordered to go into room No. 5, had a right to assume that this had been done through some competent servant or servants in the employment of the appellant. *Rogers* v. *Leyden*, 127 Ind. 50. Of course the servant must use his faculties in ascertaining whether danger actually exists, if the same is patent or open to the view. But he is not bound to be looking out for latent and hidden dangers, nor is he charged with knowledge of the dangerous character of the place in which he is required to work, if it is the duty of the master to make it safe, for the servant is always justified in assuming that the master has performed his duty, and to act upon that

assumption within reasonable limits. *Bradbury* v. *Goodwin*, 108 Ind. 286. It was not incumbent, therefore, upon the appellee to test the safety of the roof by tapping upon it, as counsel insist it was, and his failure to do so cannot be held to be negligence on his part. In *Parke County Coal Co.* v. *Barth*, 5 Ind. App. 159, this court, by Black, J., said : "One engaged as a coal miner, * * has a right to assume, in the absence of apparent defects, that a passage-way provided in the mine by his employer, through which it is necessary for the employe to pass * * has been constructed and is maintained with such skill, prudence, and caution that it is safe for such use ; and he is not bound to inspect it, or to search therein, for the purpose of discovering latent and hidden defects which render it dangerous for such use." This statement of the law is still in accord with the views of this court, and is decisive of the point. Nor can we say that because appellee had some information that some rock and slate had fallen from the roof previous to his entering the room, this was notice to him of the impending danger of the falling of more rock and slate. On the contrary, we think this might have been some evidence to appellee that there was really less danger after than there had been prior to the falling of such loose pieces. The jury expressly found that at the time he entered said room and at the time he received said injury, the appellee had no knowledge of the dangerous condition of said roof, and had not been informed of the unsafe condition of said room by the said mining boss or any one else, except such information as he received from one of his fellow servants immediately before the injury, when he had no opportunity of avoiding it. We think this want of knowledge on his part, and the fact that he was ordered to go into said room by the mine boss, rendered his act in entering said room justifiable,

and that such act was not an act of negligence on his part. Moreover, the statute makes it the express duty of the mine boss to provide safe places for the miners to work in. Acts 1891, page 57, section 12. The very man, therefore, upon whom the duty of keeping the roof in safe condition devolved was present and ordered the appellee into the room, after he had previously ordered two other miners into the same, as the jury found. The appellee knew all this, and knew he had the right to suppose that the room was safe enough for him to enter and work in as he was directed. Had he been ordered there for the purpose of assisting in making the roof secure, his duty might have required him to exercise greater care, for.in that case the very order would of itself have been a warning of the perilous situation. We are, therefore, of the opinion that the verdict shows affirmatively that the appellee used such ordinary care as under the circumstances he was required to exercise. This being true it was not necessary for the jury to find, in terms, as they did, that the appellee used reasonable care and caution, and that he could not by the reasonable exercise of such care and caution have discovered the unsafe and dangerous condition of the roof sooner than he did, and that his injuries were received without any fault or negligence upon his part. If this finding is a mere legal conclusion, as the appellant insists, it can do the appellant no harm; for, as we have already said, there is enough in the verdict without this statement. The facts found show that, in obedience to the orders of the mine boss, the appellee entered the room to assist those therein working and to convey to them some order from said mine boss; that immediately upon entering he conveyed this order to said hands, who at once informed him of the danger threatening him from the roof, but that before he had sufficient time to stand

The Island Coal Company v. Risher.

aside, a stone fell from the roof and injured him.   We think this is an affirmative finding of such diligence and precaution as the appellee was under the circumstances required to exercise, and that it did not devolve upon him to make a special examination of the condition of the roof before he could enter the room and perform the task assigned him.

It is next contended by appellant's counsel that the verdict further discloses that Silas C. Risher, the mining boss, was a fellow servant with the appellee; that his negligence in failing to render the place safe and secure where he required appellee to work, and in ordering him into said room when the room was in such an unsafe condition, was the negligence of a fellow-servant, for which the appellant cannot be held responsible.

The jury in their special verdict found that the roof of room No. 5 in said mine, on the day of the injury and for a long time prior thereto, was in a dangerous and unsafe condition, and of such a character "that it was dangerous and unsafe at all times, all of which facts were well known to the defendant and its said mining boss, Silas C. Risher, on and during said 16th day of January, 1892 (the day of the injury), and for a long time prior thereto."

It appears to us that the question of whether the mine boss was or was not a fellow-servant is not decisive of the appellant's liability, in view of this finding. The appellant was required to use ordinary care in keeping the mine and the roof thereof in a reasonably safe condition.   The failure to so keep the same by the appellant was culpable negligence, and the fact that the mine boss was also negligent would not excuse the appellant.   The case of *Rogers* v. *Leyden, supra,* was, in many respects, analogous to the case at bar.   It was an action by a miner against the owner of a coal mine, for

damages for an injury sustained by the falling of an overhanging part of the roof of the mine. It was there contended, as it is here, that the injury was occasioned by the failure of the mine boss, a fellow-servant, to do his duty in keeping the roof of the mine safe. Elliott, J., in discussing this point in the opinion delivered by him for the court, said: "If it were conceded that the 'mine boss' was the fellow-servant of the appellee, and not the representative of the employer, still his negligence would not absolve the employer, although it may have concurred with the negligence of the latter in producing the injury. Where the master is negligent he is responsible, although the negligence of a fellow-servant may have concurred in bringing injury upon the plaintiff. An employer must answer for his own breach of duty to his employes, even though one of his employes was also guilty of negligence which contributed to the wrong done to the injured employe.    *    *    * This rule rests on solid principle. It is no more than bare justice to compel a wrong-doer to answer for the proximate consequences of his own negligence, and it would be to the last degree unjust to permit him to escape responsibility upon the ground that some one else was also guilty of culpable negligence. The law cannot be reproached with such injustice as is involved in the assertion that a wrong-doing employer may shelter himself behind the act of one of his employes who, like himself, has been guilty of an actionable wrong."

That this case correctly expresses the law, we entertain no doubt. It was so decided by this court in *Hancock* v. *Keene*, 5 Ind. App. 408, where it was said: "The duty of the master to exercise ordinary care and skill concerning the place in which the servant is required to work is a continuing duty, and the master cannot escape responsibility for failure to keep such

place safe by delegating the performance of the duty to another; and the servant may rely upon the master to perform this duty.   *   *   *   The cause of the appellee's injury was the falling of a portion of the roof for want of proper and sufficient support.   If it can be held, as the appellant contends, that the verdict shows that want of his care on the part of the coal miner, John B. Keene, contributed to the injury, and if he be regarded as a fellow-servant with the appellee, yet it is well established that where negligence of the master combined with the negligence of his servant produces injury to a fellow servant, the injured servant may recover damages of the master."

See, also, Boswell Pers. Injury, section 215.

Many other authorities might be cited in support of the rule, but it is unnecessary to multiply them. That the mine boss was acting for the master when he gave directions to the appellee to enter the room, and that the appellee was justified in obeying the directions is not seriously questioned.   We think the special verdict abundantly shows such negligence as will hold the appellant liable, whether the mining boss was a fellow-servant or a vice principal when he negligently failed to maintain the roof of appellant's mine in a safe condition for the employes to work in.   We have examined the cases cited by appellant's counsel to the proposition that appellant is not liable in the present case, because the negligence complained of was that of a fellow servant, and do not think they sustain counsel.

One of the specifications of error is the overruling of the appellant's motion for a new trial.   It is insisted, under this head, that the evidence fails to support the verdict, and this has been assigned as a cause in the motion for a new trial.   The appellant's learned counsel strenuously contend that the evidence shows beyond

a doubt that the injury sued for was the result of the appellee's own gross carelessness. It would be an un-remunerative task to attempt to set forth in this opinion the large volume of evidence adduced at the trial in order to demonstrate its sufficiency to sustain the find-ing of the jury that the appellee was free from contrib-utory fault. Suffice it to say that the facts found by the jury are abundantly proved by the evidence, and we may add, without material conflict upon the ques-tion now under consideration. Counsel make much of the fact that appellee was thoroughly familiar with the mine and had much experience in laboring in it and other mines, and that he knew that room No. 5 had been "shot" and some of the roof had fallen. But we cannot say that these things were any evidence of neg-ligence. We have already adverted to this point in consid-ering the special verdict, and need not re-iterate what we there said. Nor do we think the evidence conclusively shows, as appellant's counsel contend, that the negli-gence relied upon for a recovery was that of a fellow-servant only. There was evidence tending to show neg-ligence on the part of the master in failing to provide sufficient safe-guards for the protection of the men in the room where appellee was injured. We cannot dis-turb the verdict on account of the insufficiency of the evidence.

On cross-examination of appellee, the appellant's counsel asked him what was the duty of a miner, in that coal mine, with reference to examining the roof of an entry or room into which he was going to work. To this question the court sustained an objection. It is claimed by appellant's counsel, in argument, that this was palpable error, for the reason that the appellant should have been permitted, under the law, to prove the rules of the company with respect of the duties of the

employes of the appellant about the mine. We do not think there was any error in the ruling complained of. It does not appear whether the "duty" which the appellant sought to establish by the appellee's cross-examination was one enjoined by the law, or by the contract between the appellee and appellant, or by the rules of the appellant. Doubtless the appellant had a right to show what his rules were respecting the subject, but the proof must be made in a legal way. The appellee was permitted to prove, over appellant's objection and exception, a certain declaration made by appellee in regard to suffering and pain endured by him sometime after the injury complained of had been received. The exact question asked of the witness Winfield S. Risher, a brother of the appellee, was: "What complaints did he [appellee] make of pain, if any?" The appellant objected to the question because it was a declaration made by appellee and could not bind the appellant, and because it did not tend to prove any issue in the cause. The court having overruled the objection, the witness answered: "He complained of his back."

Exclamations and expressions of present pain and suffering from the injury complained of in this kind of action are always proper, although made some time subsequent to the receipt of the injury, and they are not regarded as self serving declarations or hearsay. *Sturgeon* v. *Sturgeon*, 4 Ind. App. 232.

Other questions of practice of minor importance are presented, but we do not deem it necessary to notice them in detail. The record discloses no error for which we feel authorized to reverse the judgment.

Judgment affirmed.

Filed April 10, 1895: petition for rehearing overruled June 14, 1895.